## Stetson *v.* Rosenberger.

*Wills—Trust and trustees—Long continued possession of land.*

In a proceeding to obtain possession of land purchased at sheriff's sale, it appeared that in 1762 the owner of the land died leaving a will by which he gave twenty pounds a year for the maintenance of a free school in a township, the same to be paid by his executor, or the successor of such executor. Testator gave all his land to his executor with power to appoint a successor, "said land to be kept by his executors, one after another, without sale in tail for ever; the said succeeding or the surviving executors to give security for the payment of ye said twenty pounds a year." The land remained in the family of the first executor by devise from father to son for 120 years, each holder paying £20 a year. Valuable improvements were made upon the land, and no claim was made by the township other than for the £20 a year. *Held*, that in 1896, the successor in title to the first executor had a right to the possession of the land subject to the charge of £20 a year upon it.

Argued Jan. 31, 1899. Appeal, No. 419, Jan. T., 1898, by plaintiff, from judgment of C. P. Montgomery Co., Dec. T., 1898, No. 195, on verdict for defendant in case of John B. Stetson v. Isaac R. Rosenberger, trustee. Before McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Proceeding to obtain possession of land purchased at sheriff's sale. Before WEAND, J.

The facts appear by the opinion of the Supreme Court.

The court charged as follows:

It would be a difficult matter at this time for the court at length to give the reasons upon which to base the conclusion at which we have arrived; we will, therefore, briefly state the points upon which we think this case should be ruled.

It may be a question as to whether this is one of the cases intended to be provided for by the act allowing purchasers at sheriff's sales to recover possession. We treat this case, therefore, as an attempt to have this title settled. We think that that is the proper disposition to be made of it, and we have tried it accordingly. We are of opinion that every word and line in the will of Mr. Davis was intended to create a trust for charitable purposes and that it cannot be construed in any sense as a devise in fee, and that this appears in every successive deed or will, by which the successive holders claim title, down to and including John M. Jenkins. Each deed and each will mentions these people as successors and it recognizes the existence of a trust estate. Nor do we think that it is void because it creates a perpetuity. It was a devise for charitable purposes, which character of devise is saved by the express terms of the acts of assembly.

These people having gone in, therefore, as trustees cannot claim by adverse possession, upon the ground that a trustee cannot in this manner set up an adverse title to the property which he obtains in a fiduciary capacity. Nor do we think the fact that each successive holder has received the rents, issues and profits goes to show that their title was any other than a trust estate. Under this will the only money to be paid out from the estate was the twenty pounds a year; the balance of the income was evidently intended as a gratuity to those who held the trust title as a reward for their services in maintaining the trust. The fact that Mr. Jenkins failed to appoint a successor authorized the township authorities, or a majority of the people of the township, to apply for a successor in the trust; that they have done, and Mr. Rosenberger occupies that position and stands now in the position of a trustee for the entire estate. The fact that he has not given security or that the other trustees to disburse the fund have not been appointed cannot benefit the plaintiff. If any person can take advantage of that it would be the township.

Under all the evidence in this case and under the law as I view it the judgment in this case must be for the defendant, and the jury therefore is directed to render a verdict in favor of the defendant.

Verdict and judgment for defendant.    Plaintiff appealed.

*Error assigned* among others was instructions for defendant.

*Louis M. Childs* and *A. R. Place,* with them *Montgomery Evans* and *E. L. Hallman,* for appellant.—As against a defendant who showed no title and who is a mere intruder, a plaintiff in ejectment is entitled to recover on showing that his ancestor died in possession of the premises: Mobley v. Bruner, 59 Pa. 481; Lair v. Hunsicker, 28 Pa. 115.

In a proceeding to obtain possession by sheriff's vendee, where the party in possession has gone in under the title of the defendant in the execution, a third party, who has interposed, been brought in and made defendant, must prove title in himself and cannot defend on an outstanding title in another: Hale v. Henrie, 2 Watts, 143; Walker v. Bush, 30 Pa. 352; Brownfield v. Braddee, 9 Watts, 149.

In order that an estate or interest may be created or enlarged by implication there must appear from the will so strong a probability of intention that an intention contrary to that which is imputed to the testator cannot be supposed; mere conjecture cannot be taken for implication nor can even necessary implication overrule the expressed language of the will: McKeehan v. Wilson, 53 Pa. 75; Jacobs's Estate, 140 Pa. 268; Burkart v. Bucher, 2 Binn. 455; Follmer's App., 37 Pa. 121; Hagerty v. Albright, 52 Pa. 274.

But even should the court be of opinion that the will of Richard Davis was intended as a devise of all the beneficial interest in the land to the charity, they, and their representative Rosenberger, are estopped from setting up title: Wahl v. Pittsburg & Western Ry. Co., 158 Pa. 257; Logan v. Gardner, 136 Pa. 588; Logan v. Gardner, 142 Pa. 442; Woods v. Wilson, 37 Pa. 379; Chapman v. Chapman, 59 Pa. 214; Miller's App., 84 Pa. 391.

Unless the will be construed to be a devise to Jenkins in strict trust for the benefit of the school, Mr. Rosenberger has no title: Gray on Perpetuities, sec. 515; Lawrence's Est., 136 Pa. 354; Smith v. Townsend, 32 Pa. 434; Gray on Perpetuities, sec. 515.

Where there is a gift to individuals and a gift to charity, the latter is void if it offends against the rule against perpetuities:

Gray on Perp. sec. 593; Phila. v. Girard's Heirs, 45 Pa. 16; Hillyard v. Miller, 10 Pa. 326; Smith v. Townsend, 32 Pa. 426.

*N. H. Larzelere,* with him *M. M. Gibson* and *Henry Freedley,* for appellee.—An estoppel can never arise unless an innocent party ignorant of the adverse interest is misled to the injury by some act of the adverse claimant: Kline v. McCandless, 139 Pa. 223; Sensinger v. Boyer, 153 Pa. 628; Wright's App., 99 Pa. 432; Plumer's App., 11 W. N. C. 144.

If the plaintiff intends to argue the extinction of this trust because of the restriction against alienation, we reply that such uses have long been held valid. There is little difference between this and trusts in the Girard will: City v. Girard's Heirs, 45 Pa. 9; Yard's App., 64 Pa. 98; Perin v. Carey, 24 How. 495; Vidal v. Girard, 2 How. 127; Lewis on Perpetuities, 689.

A trustee in possession under a trust stands in a widely different situation in dealing with trust property from an ordinary individual. The law exacts from him uberissima fides. His possession cannot be adverse until he has done some open, unequivocal act denying the trust, and this must be brought either actually or constructively to the notice of the cestui que trust: Rush v. Barr, 1 Watts, 110; Fox v. Cash, 11 Pa. 207; Norris's App., 71 Pa. 106; Lewin on Trusts, 481.

OPINION BY MR. JUSTICE McCOLLUM, July 11, 1900:

This is a proceeding by a plaintiff to obtain possession of land which he purchased at a sheriff's sale. The defendant in the proceedings claims that he, as a trustee is entitled to the possession of it. The court below being of the opinion that the defendant's contention ought to prevail directed the jury to render a verdict in his favor. The direction was complied with and upon a verdict thus rendered a judgment was entered. From this judgment an appeal was taken to this court.

To determine the rights of the litigating parties respecting the possession of the land it is necessary to ascertain the owner of it in January, 1762, and the disposition he made of it in his will dated January 29, 1762, and admitted to probate on February 20, in the same year. It is conceded by the parties to the suit that Richard Davis was the owner of the land in fee at the time of the date of his will, and that the provisions in

the will relating to the disposition of his property are supposed by them to be expressive of his purpose regarding it. The provision in the will which relates to the alleged right of the defendant to the possession of the land is as follows : " I give and bequeath for the encouragement of learning of youth in the township of Hatfield the sum of twenty pounds a year towards keeping and maintaining a free school in the said township, the said twenty pounds to be paid yearly and every year after my decease by my executors hereafter named or the successor or survivor of him, and I do hereby appoint, constitute, make and ordain my friend John Jenkins of the township of Gwynedd my sole executor of this my last will and testament of all and singular my lands, and messuages and tenements and all my estate, real and personal, by him to be possessed during the time of his natural life, to lease out my lands at his discretion and let no waste nor destruction be made thereon, and I do hereby impower my said executor in his lifetime to choose another to act in his place after his decease, and the second to choose a third, and so on forever; my said land to be kept by my said executors, one after another, without sale in tail forever; the said succeeding or surviving executors to give security for the payment of ye said twenty pounds a year for the use of the said school to my trustees hereafter named, but if my present executor or his survivors or successors should neglect or refuse to choose another in his stead to act after his decease, then the said township or the major part of them to choose one to act as aforesaid." It will be seen from the foregoing provision of the will that John Jenkins of the township of Gwynedd was not required to give security for the payment of the twenty pounds towards maintaining a free school in the township of Hatfield, and that from and after the death of the testator he was entitled to the possession and control of the real and personal estate of the deceased, " during the time of his natural life." It was the succeeding or surviving executors only who were required to give security for the payment of the twenty pounds in accordance with the terms of the provision aforesaid. The right of the said John Jenkins to the possession of said real and personal estate dated from the time of the probate of the will and continued for a period of twenty-eight years and eleven months, at the expiration of which time he conveyed the land

to his son, John Jenkins, Jr., subject to the payment of the
sum of twenty pounds on March 25, in each and every year,
towards the keeping and maintaining of a free school in Hatfield
township.    On May 24, 1805, John Jenkins, Jr., made his will
which was probated on August 29, in the same year, and in
which he devised to his son Owen 100 acres of the land he re-
ceived under the deed from his father, subject to the annual
payment of the twenty pounds to which the Hatfield school
was entitled.    Owen Jenkins made his will on May 11, 1843,
which was probated on June 3, 1856, and in which he devised
the said 100 acres to his son John M. Jenkins, charged with
the annuity aforesaid.    The said John M. Jenkins, on Octo-
ber 6, 1879, made "a contract of exchange in Philadelphia
property with Charles W. Stetson" who received from the ad-
ministrators of Jenkins a conveyance of the 100 acres, and who
transferred to them the Philadelphia property and a purchase
money mortgage of $6,000.    Stetson took possession of the
property conveyed to him, took the profits and paid the annuity
as it fell due according to the terms expressed in the deed of
1791.    He paid off the purchase money mortgage of the Jen-
kinses and to procure the money therefor he placed thereon
another mortgage of $4,500 accompanied by his own bond.    He
remained in possession until 1883, when he sold to Mollenhower
subject to the mortgage of $4,500.    Mollenhower took posses-
sion of the property he purchased, reduced the mortgage upon
it by payments on account, to about $3,000, paid the twenty
pounds annually, and appropriated to his own use the profits re-
maining up to the time of the sheriff's sale, in December, 1896,.
when the present plaintiff became the purchaser of it.

That John Jenkins, the first, or some of his descendants had
possession of and received the profits accruing from the land
in dispute from February, 1762 to 1880, does not admit of a
reasonable doubt.    It must be conceded also that the parties
in possession of the property during the period aforesaid made
valuable improvements upon it and paid the sum of twenty
pounds a year towards keeping and maintaining a free school
in Hatfield township, as by the will of January 29, 1762, they
were required to do.    It seems that the parties who took pos-
session of the property after the death of Richard Davis re-
garded it as belonging to them subject only to the payment of

the twenty pounds as aforesaid. The deed of 1791 from John Jenkins, the first to his son, John Jenkins, Jr., is at least confirmatory of this view. It is certain that the representatives of the free school never alleged previous to 1884, that they had any claim upon the property beyond the twenty pounds which by the will was payable to them each year, and the one acre of land "by the great road side by the creek side adjoining James Logan's land for the use of said school."

The alleged appointment of Rosenberger as trustee by the major part of the voters of Hatfield township is by no means satisfactory. He furnished no security for the payment of the twenty pounds a year for the use of the free school. He had no written agreement with Mollenhower until January, 1897, and what he calls "a verbal arrangement" with him related to payment of the annuity and the recognition of Rosenberger as trustee.

The possession and improvement of the land by the Jenkinses for a period of 120 years, the deed from John Jenkins, the first to his son, John Jenkins, Jr., the devise of 100 acres of the land by the latter to his son, Owen Jenkins, and the remaining part to his son, Jesse, the devise by Owen Jenkins of said 100 acres to his son, John M. Jenkins the contract of exchange between the said John M. Jenkins and Charles W. Stetson, the possession by the latter of the 100 acres and his sale of it to Mollenhower who took possession of it in 1883 unite in showing that the parties in possession as above stated had an equitable interest in the property subject only to the payment annually to the trustees of the free school of the twenty pounds as required by the terms of the Davis will. The right of the free school to the annuity provided for in said will has never been questioned and the annuity has always been paid when called for by the party entitled to it. The denial by the court below of the right of the plaintiff to have possession of the land while he concedes that the annuity is a charge upon it which he is ready and willing to pay in accordance with the provision of the will of 1762, is, under the circumstances, unwarranted. We are all of the opinion that the court below should have directed the jury to render a verdict in favor of the plaintiff.

Judgment reversed with direction to the court below to enter a judgment in conformity with this opinion.